Dorothy FIGHTMASTER, Appellant,

v.

H. Gale LEFFLER et al., Appellees.

Court of Appeals of Kentucky.

March 25, 1977.

Rehearing Denied June 10, 1977.

Discretionary Review Denied Oct. 24, 1977.

James M. Todd, Todd & Sherrow, Lexington, Asa M. Rouse, Rouse, Mathis & Benson, Walton, for appellant.

Thomas C. Smith, Covington, for H. Gale Leffler.

Rodney S. Bryson, Ware, Bryson, Nolan, West & Hiltz, Covington, for Jack Greenberg.

Before GANT, HOWERTON and WHITE, JJ.

GANT, Judge.

This was an action to set aside three deeds on the grounds of fraud and breach of trust. The Appellant, Mrs. Dorothy Fightmaster, had acquired title to 2.4 acres in Boone County, Kentucky, by a survivorship deed in 1954, and through the death of her husband in 1963. The facts disclosed that in January of 1966, the Appellant became acquainted with the Appellee, Leffler, and that some ten months later she conveyed this tract of land to him for the purpose of sale or development after she had tried unsuccessfully to sell it herself. The deed from Fightmaster to Leffler was a General Warranty Deed and contained no notice to anyone that Mrs. Fightmaster was retaining any interest therein but, in fact, the purpose of the deed was for Leffler to assist her and at all times she was expecting to receive the proceeds therefrom.

Thereafter, Leffler advertised the property in various newspapers and was contacted

by the Appellee Greenberg, a self-employed realtor and developer from Cincinnati. After several discussions between Leffler and Greenberg, the two of them arrived at a plan whereby Leffler would sell to Greenberg a two-thirds interest in the property for $5,000 and the two of them would form a corporation, Appellee Boone Enterprises, Inc., to hold this property as its sole asset. Leffler was to have five shares of stock in the corporation and Greenberg ten shares of stock, in accordance with their agreement. Approximately one year after Mrs. Fightmaster had conveyed the property to Leffler, that deed was recorded and at the same time a deed from Leffler to Boone Enterprises, Inc. was recorded. The stamps on the two deeds reflected that the consideration from the Fightmaster to Leffler deed was $500.00 or less and the consideration from Leffler to Boone Enterprises was $7,500.00.

A few months after the incorporation, Leffler sold his five shares of stock to Greenberg for $2,000.00, making a total of $7,000.00 which Leffler had received from Greenberg for the property. Greenberg then transferred the property from Boone Enterprises, Inc. to himself, individually, and continued to hold this property in his individual name until the time this action was brought in September, 1973.

Evidence at the trial indicated that a short time before Leffler conveyed the property to the corporation, in fact, two days before, he had transmitted to Mrs. Fightmaster an offer of $16,000.00 for the subject property, which she refused as inadequate. Evidence further indicated that an adjacent piece of property had been sold some short time before for $14,000.00 and a qualified appraiser testified that the actual value of the property at the time of this transfer was between $29,000.00 and $30,-000.00. Leffler never paid to Mrs. Fightmaster any of the $7,000.00 and in fact did not ever disclose to her any part of the transaction between himself and Greenberg. The testimony was that Mrs. Fightmaster made repeated inquiries of Leffler as to the progress in the sale or development of "her" property and that on each occasion she would receive some evasive answer. Finally, in December of 1971, she became dissatisfied with Leffler's answers and went down to look at the property, discovering that there were signs on the property indicating that it was for sale or lease. In January of 1972, Mrs. Fightmaster learned of the deeds from Leffler to Boone Enterprises and from Boone Enterprises to Greenberg for the first time and she then contacted two attorneys in seeking to get the return of her property. Apparently both attorneys tried to deal through Leffler alone, seeking to have him repurchase the property and convey it back to Mrs. Fightmaster, and the first notice, according to his testimony, that Greenberg received was when this action was instituted in September of 1973.

The lower court found that there was no actual or constructive notice of the fraud to the Appellee Greenberg and further found that Mrs. Fightmaster was guilty of laches. It is from these findings that the Appellant appeals.

Actual notice of fraud is seldom capable of proof by direct evidence and customarily circumstantial evidence must be relied upon. The circumstantial evidence in this case was that the Appellee Greenberg was a realtor, that he viewed the property, that he had knowledge of the sale of the adjacent property for $14,000.00, and that he had knowledge of the 55 cents in stamps on the deed from Mrs. Fightmaster to Leffler. However, we will not disturb the findings of the lower court concerning the actual knowledge of the Appellee Greenberg. Constructive knowledge or imputed fraud and breach of trust is a different matter. The courts will view confidential relationships with great suspicion and diligence and will require a difference set of standards in those instances. It is obvious here that this was, in fact, a close relationship between two men. They first participated in a joint venture or partnership for the utilization of this property and subsequently formed a two-man corporation for the same purpose. It can hardly be argued that they did not enjoy a close and confidential relationship in both capacities.

To illustrate the position of the law in regard to this matter, we must look at the

statutes and cases thereunder. The Uniform Partnership Act, *Ky.Rev.Stat.*, Chapter 362, states as follows:

*362.205. Partnership charged with knowledge of or notice to partner.*—Notice to any partner of any matter relating to partnership affairs, and the knowledge of the partner acting in the particular matter, acquired while a partner or then present to his mind, and the knowledge of any other partner who reasonably could and should have communicated it to the acting partner, operate as notice to or knowledge of the partnership, except in the case of a fraud on the partnership committed by or with the consent of that partner.

*362.210. Partnership bound by partner's wrongful act.*—When, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

*362.215. Partnership bound by partner's breach of trust.*—The partnership is bound to make good the loss:

(1) Where one partner acting within the scope of his apparent authority receives money or property of a third person and misapplies it; and

(2) Where the partnership, in the course of its business, receives money or property of a third person and the money or property so received is misapplied by any partner while it is in the custody of the partnership.

*362.220. Nature of partner's liability.*—All partners are liable:

(1) Jointly and severally for everything chargeable to the partnership under KRS 362.210 and 362.215;

(2) Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract.

■ Thus it is clear that one partner is bound by the knowledge of another, bound by his wrongful and fraudulent act, bound by his breach of trust.

■ Nor are we limited by the definition of this particular relationship, in considering whether the fraud or breach of trust occurred while these two men were associated as a partnership or as a corporation. Appellant relies on the case of *Hughett v. Shain*, 253 Ky. 330, 69 S.W.2d 688 (1934). In this case Mr. Hughett was president of a corporation selling automobiles and trucks and purchased a note from his own corporation which had been procured by fraud on the part of another officer of the corporation. The court, in the *Hughett* case, held as follows:

. . . It doubtless is true that Hughett had no knowledge of the alleged fraud, but the question presented is, whether one may buy a note from a corporation of which he is president, and occupy the position of a holder in due course. A pioneer case on the subject is *McCarty v. Kepreta*, 24 N.D. 395, 139 N.W. 992 . . . There a note and mortgage were executed without consideration to a state bank, and by it were assigned by its cashier for value to its president, who had no actual knowledge of any infirmity in the note, or of any defense to its payment. After an elaborate discussion of the question . . . the court held that the president of the bank, although he, in good faith, and for full value, purchased the note from the bank, without actual knowledge of want of consideration, was not a bona fide purchaser, since, by virtue of his position in the bank, he was presumed to have had knowledge of the transaction and was therefore affected with constructive notice. It seems to us that this doctrine is sound. Here, if there was fraud, it was committed by the motors company's secretary and salesman. His act was the act of the corporation, his knowledge was the corporation's knowledge, and the corporation's knowledge will be imputed to its president to the extent that he may not become a holder in due course of a note purchased from the corporation.

Appellees seek to distinguish between holder in due course and bona fide purchas-

er but this Court feels that no such distinction is intended by this case and it will not be permitted by this Court. It is the belief of this Court and we so find that there cannot be a holder in due course or bona fide purchaser under the circumstances of this case, and we find that the obvious fraud of Leffler is imputable to Greenberg. An excellent discussion of the reasoning behind this is found in White and Summers, *Uniform Commercial Code*, Chapter 14, P. 480 (1972). In discussing the section of the *Uniform Commercial Code* that provides that a holder in due course takes free of personal defenses of any party to the instrument with whom the holder has not dealt, the authors say, "Thus if the holder is so closely connected with the payee that they are 'one,' the maker could still assert his personal defenses." The authors go on to say that it would certainly be possible for the law to find that "one is in good faith if he has a white heart and an empty head" and yet could still find that there is a sufficient connection between the seller and the buyer that would place the buyer in the shoes of the seller.

The other ground upon which the trial court based its decision was laches on the part of Mrs. Fightmaster. It is conceded that she did not learn of the fraud and breach of trust practiced upon her until January of 1972, and that her attorneys immediately set about to remedy the situation, bringing this action in September of 1973. We do not consider that an unreasonable delay under the circumstances. It is not questioned that Leffler could not plead laches under these circumstances, as it was he who caused the delay. The Kentucky cases have long held that laches requires something more than a delay in that it requires a change in position by the defendant to such a point that he could not be restored to his former state and that it would be inequitable to enforce the action of the plaintiff. We find in the instant case that Greenberg had paid a moderate amount of taxes and had mowed the 2.4 acres periodically and this was his sole "change of position."

The law in circumstances such as those which we find in this case is well stated in the case of *Richardson v. Blue Grass Mining Co.*, D.C., 29 F.Supp. 658, 665, (1939), affirmed, *Blue Grass Mining Co. v. Richardson*, 6 Cir., 127 F.2d 291, certiorari denied, 317 U.S. 639, 63 S.Ct. 30, 87 L.Ed. 515. In this case it is stated as follows:

It is true that the familiar maxim "Equity aids the vigilant, not those who slumber on their rights", furnishes an important rule to prevent the enforcement of stale demands independent of statutory periods of limitations. Mere lapse of time, however, is not the only element to be considered in applying the rule. A more important consideration is whether delay in asserting the claim has worked such prejudice or disadvantage to parties adversely interested or such changed conditions have occurred in the meantime that enforcement of the claim is rendered inequitable. There is no fixed rule by which to measure the degree of laches which is sufficient to bar the enforcement of a right. Each case must be determined according to its own particular facts and circumstances. (Citing cases). Where the parties sustained a confidential relation to each other, and the claim arises from an alleged breach of trust, or fraud is imputed, in the interest of justice a Court of equity will look upon delay with much more indulgence. (Citing cases). It is sufficient to say that in light of the facts disclosed by this record, it does not appear that complainants have been guilty of unreasonable delay or that defendants have suffered such prejudice or disadvantage on account thereof as to make enforcement of the demands inequitable. The defense of laches is without merit.

For the reasons above stated, the judgment of the lower court is reversed and the case is remanded to that court for judgment in conformity herewith.

All concur.